UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:15-cv-00210-JAW |
| ) | No. 1:11-cr-205-JAW |
| DAWLIN CABRERA ) | |

**UNITED STATES' OBJECTION TO CABRERA'S MOTION TO CORRECT OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by Donald Feith, Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515, submits the following objection to petitioner's motion to set aside or vacate his sentence.

**Introduction**.

Petitioner Dawlin Cabrera seeks to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. Cabrera's petition alleges four grounds for the relief he seeks. First, Cabrera claims that he was denied due process and effective assistance of counsel with respect to the drug quantity for which he was found liable because the determination of that quantity was both substantively and procedurally flawed. Next, Cabrera claims that he was denied the effective assistance of counsel with respect to the legal advice he received about his guilty plea in that trial counsel did not properly advised Cabrera about the drug quantity calculation or about certain sentencing enhancements. Third, Cabrera claims the United States used protected information provided by Cabrera against him at sentencing. Finally, Cabrera asserts that his counsel was ineffective for not obtaining a copy of the presentence investigation report and by not raising challenges to certain sentencing enhancements or the government's alleged use of information protected by a proffer agreement.

1

A review of the record establishes that Cabrera's claims are without any basis and his petitioner should be dismissed.

**Factual Summary**.

On November 17, 2011, a grand jury for the District of Maine charged Cabrera with conspiracy to distribute and to possess with the intent to distribute cocaine and 28 grams or more of cocaine base. The grand jury returned a superseding indictment alleging the same offense on January 12, 2012.[1]  *United States v. Dawlin Cabrera*, 1:11-cr-205-4-JAW, Revised Presentence Investigation Report ("PSR") at ¶ 1. He was arrested in the Southern District of New York on February 2, 2012. After some procedural skirmishing, he was ordered detained pending trial. *Id*.

As documented in the PSR, Cabrera's arrest was based upon his participation in a long-running crack cocaine distribution operation in the Bangor area that began in October 2010 and continued until it was shut down by law enforcement on November 3, 2011. Cabrera was identified by other conspirators as the "boss" of the operation and provided crack cocaine to the conspiracy from his base in New York City. PSR, ¶ 10. The record establishes that Cabrera's underlings, notably Manuel Trinidad-Acosta, Jowenky Nunez, Alfarabick Mally and Abraham Lluberes served as operatives for Cabrera in Bangor. *Id*. The conspiracy operated out of residences at 100 Ohio Street in Bangor and 100B Ohio Street served as the center of the conspiracy's activities.

When law enforcement executed search warrants at 100 Ohio Street on November 3and 4, 2011, they recovered firearms, numerous documents evidencing who lived at the residence, receipts for furniture rented in the name of Cabrera's alias, Rolando Rosario Andujar, bank records, areas of the apartment that had been modified to hide drugs and currency (so-called

---

[1] The superseding indictment re-alleged the conspiracy charge and added defendants and firearms charges that did not include Cabrera as a charged defendant.

"hides"), and drug packaging paraphernalia. They did not seize any significant quantity of drugs nor any substantial sums of money. However, on November 3, 2011 authorities also executed a search of an apartment used by one of the conspirators at 111 Garland Street in Bangor and recovered 368 grams of crack cocaine. PSR, ¶11.

As part of the investigation, law enforcement obtained records from the Bank of America for accounts held in the name of Cabrera's alias, Rolando Rosario Andujar. Those records establish that between October 22, 2010 and October 27, 2011, $202,559 in cash was deposited into the Andujar account. Evidence from the case established that the cash was the proceeds from drug sales by the conspirators. PSR, ¶ 10.

Soon after the execution of the search warrants at 100 Ohio Street and 111 Garland Street, members of the conspiracy began providing information to law enforcement. Coconspirator Pari Proffit provided information on November 14, 2011 and February 24, 2012 concerning the roles of the various conspirators and their hierarchy within the conspiracy,[2] the quantities sold by the conspirators, the price structure for those sales. Coconspirator Kizzy Fader provided information on November 8, 2011, including information on her observation that three members of the conspiracy removed crack from 100B Ohio Street after the search warrants were executed. This information was later corroborated by coconspirator Abraham Lluberes, who was one of the individuals, along with Cabrera and Kelvin Mally, involved in recovering the drugs. The quantity removed was estimated to be 350 grams of crack cocaine. PSR, ¶ 12.

Cabrera provided a proffer to law enforcement on March 1, 2012 and provided information about the conspiracy. He estimated that 100 grams of crack would last about 10

---

[2] Proffitt was the live-in girlfriend of Manuel Trinidad-Acosta and had first-hand knowledge of the conspiracy. She identified Cabrera as the leader of the conspiracy and provided an estimate that the conspirators sold of 700 grams of crack per month.

days. He admitted to recovering drugs from 100B Ohio Street after the police searched the residence, though he claimed Abraham Lluberes, Kelvin Mally and Kizzy Fader made the recovery.

Cabrera pleaded guilty on November 14, 2012. The government submitted a version of the offense that stated the conspirators distributed not less than 350 grams per month for the 14-month duration of the conspiracy. Cabrera was asked by the court if Cabrera had reviewed the government's version of the offense and did he disagree with any of the contents of the version of the offense. Cabrera answered that he had completely reviewed the document and that he had no disagreements with it. *United States v. Dawlin Cabrera*, 1:11-cr-205-4-JAW, Transcript of Rule 11 Proceedings, Docket Entry ("DE") 624 at 13-14, (D. Me. Nov. 14, 2012).

Cabrera was sentenced on June 24, 2013. The PSR held Cabrera responsible for a total of 4.9 kilograms of crack cocaine. PSR, ¶ 14. The PSR also assessed a four level increase for Cabrera's role in the offense as an organizer or leader, PSR, ¶ 23, a two level increase for firearms, PSR, ¶ 20, and a two level increase for maintaining a drug distribution premises, PSR, ¶ 21. At the sentencing hearing, the court engaged in the following colloquy with Cabrera:

> THE COURT: You're here represented by your attorney, Mr. Aranda; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you authorize Mr. Aranda to speak for you?
>
> THE DEFENDANT: Completely, sir, yes.
>
> THE COURT: Mr. Aranda, has your client received a copy of the written presentence report as revised?
>
> MR. ARANDA: Yes, Judge.
>
> THE COURT: Have you had enough time to discuss the contents of the report with him?

MR. ARANDA:         Yes, I have, Your Honor.

THE COURT:          Mr. Cabrera, have you read the report in its entirety?

THE DEFENDANT:  Yes, sir, more than once.

THE COURT:          Have you had enough time to discuss the contents with your attorney?

THE DEFENDANT:  Yes.

THE COURT:          Do you know and understand everything in the report?

THE DEFENDANT:  Yes, sir.

THE COURT:          Now, you realize, Mr. Cabrera that the reason for the report is to give me information so that I can determine the correct sentence to impose upon you. Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:          Right?

THE DEFENDANT:  Yes, sir.

THE COURT:          Knowing that the contents of the report may affect the amount of time you spend in prison, is there anything in the report you believe is in any way inaccurate?

(Defendant speaking with Mr. Aranda.)

THE DEFENDANT:  Yeah, I argued with my lawyer. I mean –

THE COURT:          Sorry?

THE DEFENDANT:  -- I -- I have discussed whatever was not there, you know, with my lawyer, and he already knows that.

THE COURT:          I can't understand what you're saying. You discussed the issues that you had with the -- about the report with your lawyer?

THE DEFENDANT:  They revised -- revised the report, and I went over it with my lawyer, and I told him what was what and what wasn't, you know.

5

| | | |
|---|---|---|
| THE COURT: | | Right. |
| THE DEFENDANT: | | Yeah, I did. |
| THE COURT: | | Well, I'm glad to hear that. But my question for you is, have you read the revised report? |
| MR. ARANDA: | | Yes. |
| THE DEFENDANT: | | Yes, sir. |
| THE COURT: | | And whatever issues you had with the report before, have they been resolved? |
| THE DEFENDANT: | | Yes, Your Honor. |
| THE COURT: | | Is there anything in the report you believe is in any way inaccurate? |
| THE DEFENDANT: | | No, sir. |

*United States v. Dawlin Cabrera*, 1:11-cr-205-4-JAW, Transcript of Sentencing Proceedings, Docket Entry ("DE") 579 at 3-5, (D. Me. June 24, 2013).

Based upon a total offense level of 41 and a criminal history category of I, the advisory guideline range was 324 to 405 months.[3] PSR, ¶ 53. The government recommended a sentence of 120 months based upon a representation it made in a letter to Cabrera's defense counsel. The court imposed a sentence of 120 months.

Cabrera filed an appeal with the First Circuit Court of Appeals. The sole issue on appeal was whether the sentencing court improperly considered Cabrera's status as a naturalized citizen when the court imposed sentence. The Court of Appeals affirmed the sentence on December 5, 2014.

---

[3] Under the amended drug table, Cabrera's total offense level would be 39 and his advisory guideline range would be 262 to 327 months. However, as he indicates in his petition, Cabrera has already received the benefit of the amendment. *See* Order granting motion to reduce sentence as to Dawlin Cabrera, DE 855, reducing the sentence to 97 months.

**Argument.**

**A.  Cabrera's claims are procedurally defaulted.**

Cabrera's claims are procedurally defaulted because they were not raised in the district court or on direct appeal and Cabrera has failed to show cause for the default or demonstrate prejudice from the alleged errors. *Jordan v. United States*, 2015 WL 4237688 (1st Cir. July 14, 2015); *United States v. Barnett*, 75 F.3d 1224 (1st Cir. 1996); *United States v. Munoz*, 72 F.3d 121 (1st Cir. 1995).

It is unsurprising that Cabrera cannot show cause for his procedural default.  While he couches his claims in the terms of ineffective assistance of counsel, the record shows that Cabrera was directly questioned by the court about the contents of the revised presentence report. At his sentencing hearing, Cabrera testified that he had reviewed the PSR with his attorney and had no disagreement with it.  Thus, Cabrera's claim that his counsel was ineffective for not challenging the facts in the report is unavailing.

**B.  Cabrera's counsel was not ineffective.**

Cabrera alleges he received ineffective assistance of counsel with respect to the drug quantity calculation, with respect to items that served to increase the total offense level applicable to Cabrera, and with respect to the government's alleged use of protected information. Each of these claims lacks merit.

Where a defendant claims ineffective assistance of counsel, he must demonstrate both: (1) that "counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In other words, a defendant is entitled to relief under

7

Strickland where (1) counsel's performance fell below the minimum standards of representation, and (2) that there is a reasonable probability that the deficiency altered the outcome of the case. *Robidoux v. O'Brien*, 643 F.3d 334, 338 (1st Cir. 2001). The defendant bears the "heavy" burden of demonstrating both ineffective representation and resulting prejudice. *Bucuvalas v. United States*, 98 F.3d 652, 658 (1st Cir. 1996).

A court reviewing an ineffective assistance of counsel claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. "It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied." *Knight v. Spencer,* 447 F.3d 6, 15 (1st Cir.2006) (internal quotation marks omitted).

**1. The Drug Quantity Calculation.**

Cabrera's claim as to the drug quantity calculation lacks merit. The PSR established that Cabrera was responsible for 4.9 kilograms of crack cocaine, which fell within the range of 2.8 to 8.4 kilograms of crack cocaine generated a base offense level of 36. *See* United States Sentencing Guidelines, § 2D1.1(c)(2) Nov. 1, 2013. Cabrera claims his trial counsel was not effective by failing to challenge this calculation.

Cabrera concedes that a more truthful and accurate drug quantity would be 200 grams per month for 14 months. *Cabrera v. United States*, 1:15-cv-210, Memorandum In Support Of Motion To Vacate Or Correct Sentence Pursuant To 128 U.S.C. § 2255 at p. 5. Using Cabrera's own drug calculation, which is not supported by the record, generates a drug quantity of 2.8 kilograms of crack cocaine. That quantity would generate the same base offense level as the 4.9 kilogram quantity that is calculated by the PSR.

Cabrera's claim ignores the evidence in the record.  First, the record establishes that 718 grams of crack cocaine were delivered in the last month of the conspiracy.  PSR, ¶¶ 11, 12.  Using Cabrera's 200 gram calculation for the first 13 months of the conspiracy and the PSR calculation of 718 for the last month generates a quantity of 3.318 kilograms of crack cocaine.  His claim also ignores his agreement to the government's version of the offense that set forth an average quantity of 350 grams per month for the 14-month duration of the conspiracy as well as his agreement to the quantities set forth in the PSR.[4]

Cabrera's makes a broad claim of ineffective assistance without providing any explanation as to how his counsel could have challenged the drug quantity in light of the evidentiary record.  Moreover, Cabrera's own suggested drug quantity does not result in any change to the base offense level.  Accordingly, he has suffered no prejudice from his trial counsel's alleged failures.  The first ground of his petition should be denied.

**2.  Cabrera did not receive ineffective assistance of counsel as to his plea.**

Cabrera next claims that ineffective assistance because he was misadvised as to the drug quantity and was not advised as to the sentencing enhancements for possession of a firearm and maintaining a drug distribution premises.  U.S.S.G. §§ 2D1.1(b)(2), (b)(12).  Again, this claim is without merit in light of the overwhelming record evidence.

As to the premises claim, during the search of 100 B Ohio Street on November 3 and 4, 2011, law enforcement seized documents evidencing the rental of furniture for the apartment.

---

[4] Cabrera testified in the case of *United States v. Trinidad Acosta and Cogswell*, 1:11-cr-205-JAW, that the quantity sold by the conspiracy started at 50 grams per month, grew to 100 grams per month and after six or seven months grew to 300 grams per month.  DE 595, pp. 499-501.  In *United States v. Fader*, 1:12-cr-007-JAW, Cabrera testified that the conspiracy initially shipped 100 grams at a time and that amount that would last 9 to 12 days and that later shipments involved greater quantities.  DE 73 pp. 10-12.  He also testified that 780 grams of crack had been delivered shortly before the November 1, 2011 search of 100 B Ohio Street.  *Id*. at 39.

The rental agreement was in the name of Cabrera's alias Rolando Rosario-Andujar. These documents were used as exhibits in the trials of Kizzy Fader and Trinidad-Acosta and in each trial Cabrera admitted that he rented the furniture for the apartment. *Fader*, DE 73 at 15-16, Ex. 39; *Trinidad-Acosta*, DE 595, pp. 508-509, Ex. 36.

The record establishes that 100 B Ohio Street was used primarily as the command center for the crack cocaine distribution conspiracy which Cabrera led and for which he was convicted. The evidence further established that the apartment was rented in the name of Trinidad-Acosta and that the monthly rent was paid in cash generated from the sale of crack cocaine. Cabrera facilitated maintaining the premises for drug distribution by renting furniture for the apartment. Under relevant conduct principles, Cabrera is responsible for all acts that he aided and abetted as well as the reasonably foreseeable acts of others undertaken in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(A) and (a)(1)(B). In light of the record evidence, Cabrera's counsel was not ineffective for challenging that enhancement.

Relevant conduct principles also govern the enhancement for possession of a firearm. The evidence elicited during the several trials of members in this conspiracy established that firearms were procured by the conspirators in exchange for crack cocaine. Jowenky Nunez testified that he traded crack for a firearm at Cabrera's direction. *U.S. v. Trinidad-Acosta* DE 594 p. 404, 410. At the same trial, Robert Jordan testified that Cabrera threatened him with a firearm at a meeting in New York concerning the conspiracy. *Id*., DE 593 p. 99. Although Cabrera denied threatening Jordan with a real firearm.

The PSR's assignment of two points under U.S.S.G. § 2D1.1(b)(2) for possession of a firearm is amply supported by the record evidence. Cabrera's counsel cannot be found to be ineffective for not challenging that evidence. Moreover, Cabrera confirmed with the court that

he did not disagree with the final PSR after having reviewed it and made his objections known to his counsel. In light of this record, Cabrera's second claim must be denied.

### 3. The government did not use protected information.

Cabrera's next claim is that the government used protected information obtained during a proffer session with Cabrera against Cabrera in violation of the cooperation agreement. Cabrera's claims are without merit.

Cabrera and the United States entered into a cooperation agreement on May 12, 2012. *United States v. Trinidad-Acosta*, 1:11-cr-205-JAW, DE 228. Under the terms of the agreement, the United States agreed not to use any information obtained directly or indirectly from the statements made under the agreement against Cabrera. The agreement expressly incorporated a March 30, 2012 interview held under the terms of a cooperation letter.

All of the information used by the government in Cabrera's plea sentencing was obtained from other sources, including but not limited to, evidence obtained during the investigation of the case, evidence seized from the search of numerous premises related to the case, and evidence provided by other cooperators who cooperated long before Cabrera's March 30, 2012 interview. For example, Keith Lewis provided information in March 2011 to the Drug Enforcement Administration about the inner workings of the conspiracy, the quantities being distributed, the pricing structure, and the relative roles of the conspirators. Kizzy Fader provided information about the conspiracy after August 2011. In November 2011 Pari Proffitt provided information as to the conspiracy's operation, the quantities distributed, the pricing structure, the acquisition of firearms, and the roles of the conspirators. Coconspirator Pauline Rossignol provided information in February 2012 concerning the operation of the conspiracy and the quantities distributed.

The United States used the information gathered during the investigation and from the other conspirators to identify and establish its case against Cabrera. Other conspirators cooperated after Cabrera (Jordan, Alfarabick Mally. LLuberes, Nunez) and their information corroborated what the earlier cooperators had told law enforcement.

Cabrera's general claim provides the court no specifics as to what information was alleged to have been improperly used. It is unsurprising that he fails to do so because no such information was used. Cabrera's counsel cannot be found to have been ineffective in light of the record establishing a clear source of the information used to determine Cabrera's sentencing range.

### 4. Cabrera's general claim of ineffectiveness is without merit.

Cabrera's final claim is a rehashing of claims identified as grounds one through three. He identifies no additional grounds other than the drug quantity, the PSR and the improper use of protected information claims made above. As set forth above, those claims are clearly refuted by the record evidence in his case.

Importantly, Cabrera makes a claim that his counsel failed to obtain the PSR. This is demonstrably false as the colloquy from Cabrera's sentencing hearing as quoted above establishes. *See, supra*, pp. 4-6.

### Conclusion.

Cabrera's has failed to identify how his trial counsel was constitutionally ineffective and he has failed to establish how he was prejudiced. His claims are unsupported by the record in

this case, including Cabrera's own statements to the court at sentencing. His petition should be denied.

                                                          Respectfully submitted,

/s/ Donald Feith
DONALD FEITH
Acting United States Attorney

Attorney for the United States Acting Under
Authority Conferred by 28 U.S.C. § 515
New Hampshire Bar No. 783
United States Attorney's Office
53 Pleasant Street, 4th Floor
Concord, NH 03301
(603) 225-1552
Donald.Feith@usdoj.gov

## **CERTIFICATION**

       I hereby certify that a copy of this objection has been filed electronically, through ECF, and has been served by first class mail, postage prepaid, on Dawlin Cabrera, #66317-054, FCI Elkton, P.O. Box 10, Elkton, Ohio 44432 on August 24, 2015.

                                                          /s/ Donald Feith
DONALD FEITH
Acting United States Attorney