UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DAWLIN CABRERA, | ) | |
|     a/k/a Rolando Andujar, | ) | |
|     a/k/a Boss Man, a/k/a D, | ) | |
| | ) | |
|     Petitioner, | ) | 1:11-cr-00205-JAW |
| | ) | 1:15-cv-00210-JAW |
| v. | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Dawlin Cabrera moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 872.) Following a guilty plea, Petitioner was convicted of conspiracy to distribute and to possess with intent to distribute cocaine and 28 grams or more of cocaine base, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; the Court sentenced him to 120 months in prison. (Judgment, ECF No. 496 at 1-2; Superseding Indictment, ECF No. 81.) The First Circuit upheld the sentence on appeal. *United States v. Cabrera*, No. 13-1884 (1st Cir. Dec. 5, 2014). This Court has since reduced Petitioner's sentence to 97 months, pursuant to 18 U.S.C. § 3582(c)(2), based on an amendment to the sentencing guidelines that retroactively lowered the guideline sentencing range. (Order, ECF No. 855.)

Petitioner asserts the following grounds for his section 2255 motion. First, he contends that he was denied due process and that he received ineffective assistance of counsel regarding the drug quantity. (Motion at 4-5.) Second, he asserts similar claims with respect to sentencing enhancements for firearms and a rented apartment. (Motion at 5, 8.) Third, Petitioner alleges that

the Government violated the parties' plea agreement when it used information contained in Petitioner's proffer to determine the drug quantity. (Motion at 7.) The Government has moved for summary dismissal. (Response, ECF No. 879.)

Following a review of Petitioner's motion and the Government's request for dismissal, I recommend that the Court grant the Government's request, and dismiss Petitioner's motion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2011, Petitioner and three others were indicted for conspiring to distribute cocaine and cocaine base between September 2010 and approximately November 3, 2011. (Indictment, ECF No. 40.) In January 2012, the Government filed a superseding indictment, which named additional co-defendants on the conspiracy charge and added further charges against defendants other than Petitioner.[1] (Superseding Indictment at 1-2.) Petitioner retained counsel who represented him at his arraignment in February 2012 and through the proceedings relevant to Petitioner's section 2255 motion.[2] (Minute Entry, ECF No. 177.)

Petitioner signed the plea agreement and a mandatory plea agreement supplement in May 2012. (Plea Agreement, ECF No. 227 at 7; Mandatory Plea Agreement Supp., ECF No. 228 at 5.) According to the mandatory plea agreement supplement, in return for Petitioner's cooperation, the Government agreed not to use information from a March 30, 2012, proffer. (Mandatory Plea Agreement Supp. at 2.)

---

[1] The initial indictment named a total of four co-conspirators, including Petitioner, on the drug distribution conspiracy charge, and it named another co-defendant, but not Petitioner, on a firearms charge. (Indictment, ECF No. 40 at 1-2.) The superseding indictment named nine co-conspirators, including Petitioner, on the drug distribution conspiracy charge, and it added new firearms charges against co-defendants. (Superseding Indictment, ECF No. 81 at 1-3.)

[2] In May 2012, the day before he signed a plea agreement, Petitioner signed a motion to withdraw counsel; Petitioner later withdrew his motion. (Pro Se Motion, ECF No. 226; Withdrawal of Motion, ECF No. 238.) Petitioner's retained counsel was admitted pro hac vice. (Certification, ECF No. 244.) Local Rule 83.1(c)(1). Petitioner retained local counsel, who later moved to withdraw and whose motion to withdraw was granted before Petitioner pled guilty. (Notice of Appearance, ECF No. 248; Motion to Withdraw, ECF No. 307; Order, ECF No. 308.) The Court waived the requirement for local counsel when the matter was scheduled for a change of plea. (Minute Entry, ECF No. 316.)

An amended plea agreement was filed in November 2012. (Amended Plea Agreement, ECF No. 326.) The amended plea agreement provided that Petitioner understood that the term of imprisonment applicable to the charge against him was between a mandatory minimum of five years and a maximum of 40 years. (*Id.* at 1.) Above Petitioner's signature, the agreement provided: "I have read this Agreement and have carefully reviewed every part of it. I understand it and I have voluntarily agreed to it." (*Id.* at 7.) The agreement included the following statement of Petitioner's counsel: "I am legal counsel for [Petitioner]. I have carefully reviewed every part of this Agreement with [Petitioner]. To my knowledge, [Petitioner's] decision to enter into this Agreement is an informed and voluntary one." (*Id.*)

In November 2012, the Court held a change of plea hearing. (Plea Tr., ECF No. 624.) During the plea colloquy, Petitioner responded to the Court's questions by confirming that counsel had explained the charges and the possible penalties. (*Id.* at 5-6.) The Court also explained the range of possible penalties to Petitioner, stating: "Under the law, you must be placed in jail for at least five years, and you may be placed in jail for a period not to exceed 40 years." (*Id.* at 6.) In response to the Court's questions, Petitioner told the Court that he had read the prosecution's version of the facts, that he understood it, and that the prosecution version was accurate. (*Id.* at 13; Prosecution Version, ECF No. 321.)

The prosecution version states that Petitioner joined the conspiracy in approximately September 2010. (Prosecution Version at 1.) Between October 2010 and November 2011, $202,559 in cash was deposited into one of Petitioner's bank accounts under the name of one of Petitioner's aliases, and the conspirators distributed not less than 350 grams of crack cocaine per month over the 14-month duration of the conspiracy. (*Id.* at 1-2.) Petitioner obtained crack cocaine in New York, paid the New York source, arranged for the delivery of the cocaine to Bangor

3

by couriers, monitored the operation through frequent visits to Bangor, rented an apartment in Bangor, and paid for rented furniture used to furnish the apartment. (*Id.* at 2.) Petitioner acquired and initially paid for a telephone that was listed in a co-conspirator's name. (*Id.*) Petitioner traveled to Bangor after a November 3, 2011, law enforcement search of the apartment, and he and other co-conspirators recovered a quantity of crack cocaine that was not found by officers during the search. (*Id.*) On the same day, law enforcement seized approximately 368 grams of crack cocaine from another apartment, which had been rented in the name of two co-conspirators. (*Id.*)

At the plea hearing, Petitioner told the Court that no one threatened him or forced him to plead guilty, and that the Government had not made any offer to him aside from the formal plea agreement. (Plea Tr. at 14.) Petitioner confirmed that he had read and understood the plea agreement and the mandatory plea agreement supplement before he signed each, and that he signed both voluntarily after he had consulted with his attorney. (*Id.* at 15-17.)

The Court explained to Petitioner that under the mandatory plea agreement supplement, the Government may present to the Court information about Petitioner and urge the Court not to consider the information negatively against Petitioner at sentencing; the Court also explained to Petitioner that the Court was not bound by the Government's recommendation, and that if the Court imposed an increased sentence based on information that the Government obtained pursuant to the mandatory plea agreement supplement, Petitioner would not be permitted to withdraw his plea. (*Id.* at 17.) Petitioner told the Court that he understood. (*Id.*) The Court further said:

> Now, for our purposes today, the important language is what follows, and that is, the parties expressly agree and understand that should the court reject – it should say – any of the recommendations of the parties, defendant will not thereby be permitted to withdraw his plea of guilty. The parties agree and understand that the court has the discretion to impose any lawful sentence. Do you understand that language?

(*Id.* at 19-20.) Petitioner replied: "Yes, sir." (*Id.* at 20.) The Court repeated its admonition: "[I]f I do not accept those recommendations and impose a sentence that is more severe than the one being recommended, you will not then be able to withdraw your guilty plea. Do you understand?" (*Id.*) To which Petitioner replied: "I understand." (*Id.*) Petitioner also confirmed that he understood that as part of the plea agreement, he waived his right to appeal from the guilty plea and the conviction. (*Id.* at 20-21.)

The Court then explained that it must calculate the applicable sentencing guideline range and consider that range, including increases and decreases within the guidelines, and that once the Court fixes the applicable sentencing guideline range, the Court treats the range as advisory and imposes a sentence in accordance with certain factors set forth in federal criminal law. (*Id.* at 21-22.) Petitioner told the Court that he understood. (*Id.* at 22.) The Court then advised Petitioner:

> I can't determine the advisory guideline sentence until after I've read a presentence report that the probation office will prepare and until I've given your lawyer and the prosecutor an opportunity to challenge the facts in the report.
>
> After I determine what advisory guideline does apply to your case, I still have the authority to impose a sentence that is more severe, or it could be less severe, than the sentence called for by the applicable guideline. Do you understand?

(*Id.* at 22.) Petitioner replied: "Yes, sir." (*Id.*)

Once again, the Court asked Petitioner whether anyone had made any promises to him, other than the written plea agreement, as to the sentence that the Government would recommend; Petitioner replied that no such promises had been made. (*Id.* at 23.) The Court asked Petitioner whether anyone had made any promises to him as to what the sentence would be; Petitioner replied that no one had made any promises regarding the sentence. (*Id.*)

After confirming that Petitioner still wanted to plead guilty and that counsel recommended that the Court accept Petitioner's guilty plea, the Court found a factual basis for the plea, that

Petitioner was competent to enter a plea, that Petitioner knew about his right to a trial and the rights associated with that right, that Petitioner understood the minimum and maximum possible punishment, and that Petitioner entered his plea knowingly and voluntarily. (*Id.* at 23-24.) At the conclusion of the plea hearing, the Court accepted Petitioner's guilty plea. (*Id.*)

At Petitioner's sentencing hearing in June 2013, in response to the Court's questions, Petitioner told the Court that he had been afforded sufficient time to discuss the probation office's presentence investigation report with counsel, and that he understood the report. (Sentencing Tr., ECF No. 579 at 4.) Petitioner told the Court that he discussed with counsel some issues that Petitioner had with the report, that the issues were resolved, and that Petitioner believed that the revised report contained nothing inaccurate. (*Id.* at 5.)

The Court concluded, consistent with the revised presentence investigation report, that Petitioner was responsible for 4.9 kilograms of cocaine base, and that the base offense level, therefore, was 36, to which the following were added: two levels, pursuant to U.S.S.G. § 2D1.1(b)(1), because Petitioner directed his co-conspirators to carry firearms; two levels, pursuant to U.S.S.G. § 2D1.1(b)(12), because Petitioner rented at least one apartment specifically to facilitate the distribution of cocaine base; and four levels, pursuant to U.S.S.G. § 3B1.1(a), because Petitioner was an organizer or leader of a criminal activity that involved five or more participants. (*Id.* at 32; Revised Presentence Investigation Report.) The Court subtracted three levels for Petitioner's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1; the total offense level was thus 41. (Sentencing Tr. at 32.) Petitioner's criminal history category was I, which, combined with a total offense level of 41, yielded a sentencing guideline range of 324 to 405 months. (*Id.* at 33.) Petitioner did not object to the Court's findings regarding the guideline range. (*Id.*)

6

The Court granted the Government's motion for a downward departure, pursuant to U.S.S.G. § 5K1, based on Petitioner's cooperation; the amount of the departure was discussed at length at the sentencing hearing. (Motion for Downward Departure, ECF No. 482; Sentencing Tr. at 5.) The Government requested a sentence of 120 months.[3] (Sentencing Tr. at 6.)

The Court took into consideration each of the factors set forth in 18 U.S.C. § 3553(a), focusing on the Petitioner's history and characteristics, the nature and circumstances of the offense, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. (*Id.* at 33-34.) The Court accepted the Government's recommended prison term and sentenced Petitioner to 120 months in prison, followed by five years of supervised release. (*Id.* at 44; Judgment at 2-3.)

Petitioner appealed from the sentence, and argued that the Court erred when it considered Petitioner's status as a naturalized citizen in determining the sentence. (Petitioner's Appellate Brief at 2; USCA Judgment, ECF No. 818.) *Cabrera*, No. 13-1884 (1st Cir. Dec. 5, 2014). The First Circuit affirmed the sentence, stating:

> Having carefully reviewed the briefs and the record, we find that, in imposing sentence, the district court committed no error. Specifically, appellant has failed to show that the district court based its sentence on impermissible factors or abused its wide discretion, given the nature of the offense conduct as weighed against the 18 U.S.C. § 3553(a) factors considered and explained on the record. *See United States v. Santiago-Rivera*, 744 F.3d 229, 234 (1st Cir. 2014).

(USCA Judgment.)

---

[3] The Court remarked at sentencing that a Government recommendation of a 120-month sentence, when the guidelines range was 324 to 405 months, was extraordinarily low in the Court's experience. (Sentencing Tr. at 6-7.) The Government explained that during plea negotiations, the Government told Petitioner that if Petitioner testified as part of his cooperation, the Government would recommend a 50 percent reduction in the sentence, which would equate to a recommended sentence of 120 months. (Sentencing Tr., ECF No. 579 at 7-8.) At the time, the Government had calculated the guidelines range to be from 235 to 293 months. (*Id.* at 7.) Although the probation office and the Court subsequently determined the guidelines range to be from 324 to 405 months, the Government chose to continue to recommend 120 months to "play a straight hand with defendants." (*Id.* at 8.)

In March 2015, this Court granted Petitioner's amended motion for a sentence modification, pursuant to 18 U.S.C. § 3582(c)(2), based on Amendment 782 to the sentencing guidelines, and the Court reduced Petitioner's sentence from 120 months to 97 months.[4] (Amended Motion to Reduce Sentence, ECF No. 842; Order.)

Petitioner asserts that he signed his section 2255 motion on May 21, 2015. (Motion at 13.) The motion was filed timely on June 1, 2015.[5] (*Id.* at 1.) The Government filed its response in August 2015. (Response at 1.)

## II.   DISCUSSION

### A.  Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir.

---

[4] Amendment 782 to the sentencing guidelines retroactively reduced by two levels most base offense levels assigned to drug quantities. *See* U.S.S.G. App. C. Supp., Amendment 782 (Nov. 1, 2014); *United States v. Goodwin*, --- F. App'x ---, ---, 2015 WL 4442657, at *7, 2015 U.S. App. Lexis 12554, at *18-19 (1st Cir. July 21, 2015) (citing U.S.S.G. § 1B1.10(a)(1)). Petitioner's motion requested that his sentence be reduced to 97 months, based on a total offense level of 39, rather than the level of 41 determined at his sentencing hearing, and additionally a 63 percent reduction from the low end of the new guidelines range, to replicate the percentage reduction the Court granted from the low end of the previously applicable guidelines range. (Amended Motion, ECF No. 842 at 5.) The Government argued that the Court should not use its discretion to reduce the sentence. (Objection, ECF No. 848.) The Government reasoned that Petitioner had already received the benefit of a section 5K1.1 reduction, which the Government from the outset had calculated based on a guideline range that eventually became the new applicable range under Amendment 782. (*Id.* at 1.) The Court granted Petitioner's amended motion and reduced the sentence from 120 months to 97 months. (Order, ECF No. 855.)

[5] *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final.")

1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. If a

petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### B. Claims and Analysis

#### 1. Claims regarding the drug quantity

Petitioner claims that he was denied substantive and procedural due process, and that he received ineffective assistance of counsel in the determination of the drug quantity. (Motion at 4-5, 8.) Specifically, he alleges that counsel "advocated for an open plea," but told him before he

pled guilty that certain drug quantities would be found at sentencing. (*Id.* at 5.) Petitioner alleges that the drug quantity of not less than 350 grams of crack cocaine per month over the 14-month duration of the conspiracy, which the Court eventually found at Petitioner's sentencing, was inaccurate, and that a more accurate figure would be 200 grams per month over the course of seven months. (*Id.* at 4.) Petitioner alleges that counsel failed to obtain the presentence investigation report. (*Id.* at 8.) The Government argues that Petitioner's claims of substantive and procedural due process are procedurally defaulted, counsel was not ineffective, and Petitioner was not prejudiced. (Response at 7-9.)

Contrary to Petitioner's contention, he did not enter an "open plea." (Motion at 5.) *See United States v. Navarro*, 476 F.3d 188, 190 (3d Cir. 2007) (noting that an "open plea" is a plea entered without a plea agreement). Petitioner, his counsel, and the Government, all signed a plea agreement, and an amended plea agreement was filed on November 14, 2012, which was the date of the plea hearing. (Amended Plea Agreement at 1, 7; Plea Tr. at 1.) Petitioner's allegation that counsel failed to obtain the presentence investigation report is also contravened by the record; counsel represented to the Court that Petitioner had received a copy of the presentence investigation report, and Petitioner confirmed to the Court that he had received both the initial report and the revised report. (Sentencing Tr. at 3-5.)

The record also does not support Petitioner's claims regarding the drug quantity. During the colloquy at the plea hearing, Petitioner told the court that he had received a copy of the prosecution version, which alleged that the drug quantity for which Petitioner was responsible was 350 grams per month over 14 months; that he understood that the prosecution version contained facts that the Government asserted it could prove should the case go to trial; that he had reviewed

the prosecution version carefully with knowledge of its importance; and that he found the prosecution version to be accurate. (Plea Tr. at 12-14; Prosecution Version at 2.)

Petitioner's statements during the plea hearing are presumed to be truthful, and he has presented no evidence to rebut that presumption. *See United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) (noting that "the presumption of truthfulness of the [Fed. R. Crim. P.] 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified"). Furthermore, when he told the Court at sentencing that the revised presentence investigation report was accurate, Petitioner affirmed again the same drug quantity that he acknowledged in the colloquy at his plea hearing, i.e., 350 grams per month over 14 months, for a total of 4.9 kilograms. (Plea Tr. at 12-14; Prosecution Version at 2; Sentencing Tr. at 3-5.)

Petitioner's drug quantity claim not only fails on its merits, but Petitioner's procedural and substantive due process claims are procedurally defaulted because he did not raise them during the plea or sentencing process, and he waived his right to appeal from the conviction. *See Berthoff*, 308 F.3d at 127-28. Additionally, because Petitioner's underlying claims lack merit, his claims of ineffective assistance of plea, sentencing, and appellate counsel also fail. *See Tse*, 290 F.3d at 465.

### 2. Claims regarding the sentencing enhancements for firearms and the rented apartment

Petitioner alleges that counsel provided ineffective assistance because counsel at the plea hearing failed to prevent, through negotiation with the Government, the subsequent sentencing

enhancements for firearms and the rented apartment, and because at sentencing counsel failed to challenge the enhancements. (Motion at 5.)[6]

Counsel cannot negotiate the application of the sentencing guidelines. *See United States v. Vélez-Soto*, --- F.3d ---, ---, 2015 WL 5970297, at *2, 2015 U.S. App. Lexis 17867, at *5 (1st Cir. Oct. 14, 2015) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)) (noting that the Court reviews a sentence for, among other things, the procedural error of "'failing to calculate (or improperly calculating) the Guidelines range'"). The most counsel can do is negotiate with the Government a nonbinding sentencing recommendation to the Court; in this case, the plea agreement reflected that the Government would recommend a reduction for acceptance of responsibility, and it would "recommend a sentence at the low end of the advisory sentencing guideline range adopted by the court after review of the presentence investigation report." (Amended Plea Agreement at 2-3.) On this record, Petitioner's claim that his counsel was ineffective because counsel did not successfully negotiate the application of the sentencing guidelines is baseless.

---

[6] Petitioner also contends that if his criminal history category took into account a 2011 robbery and a 2010 assault, the incidents should not have gone into the calculation, as the charges were dropped. (Motion, ECF No. 872 at 5.) In fact, the criminal history category of I was based on a single prior conviction for the sale of a simulated document in 2001 in New Jersey, according to the revised presentence investigation report. (Sentencing Tr. at 35-36.) *See* U.S.S.G. § 4A1.1(c). At sentencing, the Court discussed a 2011 arrest warrant issued for Petitioner based on an alleged robbery and firearm assault of Petitioner's brother in New York, and charges filed in New York based on incidents in 2010 in which Petitioner allegedly punched his girlfriend's face with his fist and subsequently violated a protection order. (Sentencing Tr. at 36.) The Court noted that the status of the 2011 case was not clear, that charges were pending as to the 2010 incidents, and that Petitioner was not prosecuted for a 2006 automobile theft and provision of a false identification in Georgia; the Court concluded that Petitioner was "very lucky to be a Criminal History Category I given this background." (*Id.*) Thus, Petitioner's criminal history category was not increased as the result of the incidents alleged to have occurred in 2010 and 2011 in New York. The Court, however, would not have erred in considering Petitioner's other relevant conduct; on the contrary, the Court may consider an upward departure if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." *See* U.S.S.G. § 4A1.3(a)(1). A court may consider several categories of information, including "[w]hether the defendant was pending trial or sentencing on another charge at the time of the instant offense," or "[p]rior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(a)(2)(D), (E).

Petitioner's contention that his counsel was ineffective because counsel did not challenge the enhancements at sentencing is similarly without merit. The Court found at sentencing that Petitioner "directed his co-conspirators to carry firearms, which were hidden in an apartment rented by the defendant using an alias." (Sentencing Tr. at 32.) On that basis, the Court imposed a two-level enhancement. (*Id.*)

Petitioner does not allege any facts that support his claim that counsel was ineffective for failing to challenge this enhancement. Conversely, the record supports the enhancement; the revised presentence investigation report states that "[a]ccording to statements from witnesses, during the instant offense, the defendant directed his coconspirators to carry firearms." Significantly, Petitioner told the Court at sentencing that he had reviewed the report and found nothing inaccurate about it. (*Id.* at 5.)

The Court also found at sentencing that Petitioner "rented at least one apartment in Bangor specifically to facilitate the distribution of cocaine base and to be used to store cocaine base," and on that basis the Court imposed a two-level enhancement. (Sentencing Tr. at 32.) Petitioner contends: "Counsel should have ensured that my codefendant's apartment was NOT used against me, when I had no real or demonstrable connection to it, other than assisting him in buying some furniture, out of friendship." (Motion at 5.) The revised presentence investigation report, which Petitioner told the Court was accurate, states that Petitioner rented an apartment to facilitate the storage and distribution of cocaine base. (Sentencing Tr. at 5.) Simply stated, Petitioner's claim of ineffective assistance at sentencing is unsupported by the record. *See David*, 134 F.3d at 478.

### 3. Claim regarding the Government's alleged misuse of drug quantity information in the proffer statement

Petitioner claims that the Government violated the plea agreement by using information obtained from Petitioner's proffer regarding the drug quantity. (Motion at 7.) Petitioner also

claims ineffective assistance of appellate counsel based on the failure to appeal on the issue of the Government's violation of the plea agreement. (*Id.*)

Self-incriminating information that a defendant provides pursuant to a cooperation agreement is entitled to protection, pursuant to U.S.S.G. § 1B1.8(a), which states:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Section 1B1.8(b)(1), however, provides that section 1B1.8(a) does not restrict the use of information "known to the government prior to entering into the cooperation agreement."

In this case, because he failed to raise the issue at either the plea hearing or at sentencing, Petitioner has procedurally defaulted his claim that the Government violated the plea agreement. The drug quantity was stated in the prosecution version, which Petitioner, at the plea hearing, told the Court was accurate. (Plea Tr. at 13-14.) Petitioner did not object to the prosecution version based on his contention that the reference to the drug quantity violated his plea agreement. Based on the prosecution version and Petitioner's responses in the colloquy, the Court found that there was a factual basis for the guilty plea. (*Id.* at 14.) The same drug quantity was set forth in the revised presentence investigation report, which Petitioner at sentencing told the Court was accurate. (Sentencing Tr. at 5.) Again, Petitioner did not object that the reference to the drug quantity stated in the report violated his plea agreement. Through his lack of objection at the plea hearing and at sentencing, Petitioner is procedurally defaulted on any claim that he might have based on the Government's alleged violation of the plea agreement.

Petitioner's claim also fails on the merits. The record plainly establishes that during his plea hearing, Petitioner admitted without objection that the drug quantity in the presentence report

15

was accurate. Petitioner did not at sentencing contend that the reference to the drug quantity violated the plea agreement. Given Petitioner's admission and lack of objection, Petitioner's claim that the Government violated the plea agreement is not only procedurally defaulted, but the claim fails on its merits. *See David*, 134 F.3d at 478. That is, Petitioner's cannot claim that he was prejudiced by the use of information that he admitted was accurate and to which he did not object. Because the claim fails on the merits, Petitioner's corresponding claim of ineffective assistance of counsel also fails. *See Tse*, 290 F.3d at 465.

### III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 30th day of October, 2015.